FILED
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2012 SEP 13 PM 1:29

U.S. DISTRICT COURT
EASTERN DISTRICT
NEW YORK

--------------------------------------------------------------

DAMON MERRICK,

GERSHON, J.

**COMPLAINT**

Plaintiff,

-against-

POHORELSKY, M.J. Jury Trial Demanded



CITY OF NEW YORK; Police Officer John
Dennis (Shield No. 16919), and JOHN and JANE
DOE 1 through 10, individually and in their official
capacities (the names John and Jane Doe being
fictitious, as the true names are presently unknown),

Defendants.

-------------------------------------------------------- x

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation

of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the

Fourth and Fourteenth Amendments to the Constitution of the United States.

3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343

and 1367(a).

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5.    Plaintiff demands a trial by jury in this action.

## PARTIES

6.      Plaintiff Damon Merrick ("plaintiff" or "Mr. Merrick") is a resident of Kings County in the City and State of New York.

7.      Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

8.      At all times relevant defendant John Dennis was a police officer, acting as an agents, servant and employees of defendant City of New York and the NYPD. John Dennis is sued in his individual and official capacities.

9.      At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

10.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of defendant City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

11.   At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

12.   During the evening of December 22, 2011, plaintiff was lawfully walking in the vicinity of 350 Sheffield Avenue, Brooklyn, NY.

13.   Defendants stopped plaintiff without probable cause or reasonable suspicion to believe he had committed any crime or offense.

14.   Defendants asked plaintiff why he was coming out of the building, presumably referring to 350 Sheffield Avenue.

15.   Upon information and belief, 350 Sheffield Avenue is a NYCHA building.

16.   Plaintiff informed defendants that he was just walking by the location.

17.   At no time had plaintiff entered, exited or remained within 350 Sheffield Avenue.

18.   Despite the fact that they had no probable cause, defendants placed plaintiff under arrest.

19.   Plaintiff was eventually taken to the 73rd precinct.

20.   Defendants then illegally strip-searched plaintiff.

21.   At the precinct, plaintiff suffered from several asthma attacks. Notwithstanding, plaintiff's requests for medical treatment were ignored by

defendants.

22.    Ultimately, plaintiff was taken to Brooklyn Central Booking.

23.    Over thirty-six hours after his arrest, plaintiff was arraigned on several trespassing charges in Kings County Criminal Court, where the criminal charges were adjourned in contemplation of dismissal.

24.    After approximately seventy-two hours in custody, plaintiff was released.

25.    Plaintiff suffered damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, and damage to his reputation.

## FIRST CLAIM
### Unlawful Stop and Search

26.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

27.    Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched plaintiff without reasonable suspicion.

28.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

29.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

30.    Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

31.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### Unlawful Strip Search

32.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

33.    The defendants violated the Fourth and Fourteenth Amendments because they unlawfully subjected plaintiff to a strip search without legal justification.

34.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
### Unlawful Strip Search

35.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

36.   The defendants violated the Fourth and Fourteenth Amendments because they unlawfully subjected plaintiff to a strip search without legal justification.

37.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Failure To Intervene

38.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

39.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

40.   Accordingly, the defendants who failed to intervene violated the First, Fourth, Fifth And Fourteenth Amendments.

41.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### First Amendment Retaliation

42.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

43.    By their conduct, as described herein, and acting under color of state law to deprive the plaintiff of his right to freedom of speech under the First and Fourteenth Amendments, the individual defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution. The individual defendants have violated plaintiff's First Amendment rights to speech by unlawfully denying his right to speak freely by subjecting him to false arrest and excessive force to deter the exercise of his First Amendment rights.  Defendants' actions were taken in retaliation for plaintiff's exercising his First Amendment rights.

44.    As a consequence of the individual defendants' actions, plaintiff has suffered violations of his First and Fourteenth Amendment rights to free speech. Plaintiff has fear and apprehension that he will, again, be subject to similar unlawful acts by defendants done for the purpose of limiting and preventing his First Amendment-protected activities.

45.    As a direct and proximate result of the individual defendants' unlawful actions, plaintiff has suffered damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation, embarrassment and loss of reputation.

## SEVENTH CLAIM
### Deliberate Indifference to Safety/Medical Needs

46.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

47.    The individual defendants were aware of a risk to plaintiff's safety and a need for medical care and failed to act in deliberate indifference to plaintiff's needs.

48.    Accordingly, defendants violated the fourteenth amendment because they acted with deliberate indifference to plaintiff's medical needs and safety.

49.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Monell Claim

50.    Plaintiff repeats the foregoing allegations.

51.    The City of New York directly caused the constitutional violations suffered by Plaintiff.

52.    Upon information and belief, the City of New York, at all relevant times herein, was aware from notices of claim, lawsuits, complaints filed with the City, and from the City's own observations, that many of its police officers, including the individual defendants, are unfit officers who have the propensity to commit the acts alleged herein.  Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise,

discipline, and monitor the officers and improperly retained and utilized them. Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the officers.

53. Moreover, the City of New York has implemented and continues to conduct, enforce, and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residences.

54. The NYPD first implemented vertical patrols in 1991. The protocol was adopted to address crime, and specifically drug activity, in NYCHA residences. It is considered an "important component of the [NYPD]'s drug control strategy." (NYPD Patrol Guide Procedure 212-59).

55. In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building to affirmatively establish a connection to a specific building resident. If an individual stopped and seized pursuant to a vertical patrol fails to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to a specific resident or his or her own home, he or she is arrested for trespass. If the individual has not already been searched for contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

56.     The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, and even search individuals in the common areas of NYCHA residences in the absence of individualized objective facts.

57.     In 2005, the NYPD Housing Bureau alone conducted approximately 181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the previous six years. *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau*, New York City Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006) at 24.   These figures underestimate the actual number of vertical patrols, however, since NYPD officers outside of the Housing Bureau also patrol NYCHA residences, also conduct vertical patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

58.     In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

59.     Trespassing in public housing is a Class B misdemeanor under subsection (e) of NYPL Section 140.10, which was enacted in 1992, shortly after the inception of the vertical patrol program (L. 1992 ch. 434).

60.    The number of trespass arrests in NYCHA residences has surged.  The City has not provided any legitimate and neutral explanation for this rise in the arrest rate.

61.    The NYPD Patrol Guide on vertical patrol provides NYPD officers no guidance on who is to be stopped, seized, questioned, searched or arrested for trespass.  It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements, staircases and roof landings and take appropriate police action when necessary."  (NYPD Patrol Guide 212-60).  Yet the vertical patrol provision contains no criteria for determining who is - and who is not - an "unauthorized person."

62.    The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliably differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit or a building resident enjoying the common areas of his home.  Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his home.  Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliable differentiate

between a suspected trespasser and a building resident, visitor, permittee, or licensee based on this policy.

63.    Defendant's failure to provide adequate guidance, training, and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, search, and arrest for trespass results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

64.    The only guiding principles provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

65.    Under this policy, as written, people are or can be arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence. People are also arrested in instances in which they know only their friend's first name or "street" name, or only know the apartment by the location rather than the number. Individuals who remain silent upon questioning for trespass by NYPD officers are subject to arrest. This is even true if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

66.    Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises. Without probable cause to suspect criminal activity, the

individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

67.    In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves.  According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements."  Testimony of Insp. Michael C. Phipps, New York City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony).  Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their buildings. *Id.*

68.    In fact, NYCHA leases do not contain any such clause.  A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord.  For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."

69.    Trespassing is an offense which requires that a person unlawfully enter or remain in a prohibited area. There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building. Indeed, there could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

70.    Loitering also requires a specified unlawful purpose for being present at a location, such as "begging," P.L. section 240.35(1); gambling, P.L. section 240.35(2); sexual conduct, P.L. section 240.35(3); possessing a controlled substance, P.L. section 240.36; or engaging in prostitution, P.L. section 240.37.

71.    Thus, there is no legal basis for wholesale stopping. seizing, questioning, searching and arresting individuals for mere presence in lobbies, roofs, hallways, and stairwells in and around NYCHA residences. Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

72.    The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass. On information and belief, Defendant does not monitor improper stops, seizures, and searches for trespass. Nor has the Defendant instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probable cause.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.


DATED:    September 12, 2012
          New York, New York

_____
Robert Marinelli
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880

*Attorney for plaintiff*